1     TOM S. CHUN, SBN 132648
        LAW OFFICES OF TOM S. CHUN
2       Tchunbkc@aol.com
        9900 Research Drive
3     Irvine, CA 92618
        Telephone: (949) 752-1211
4     Facsimile: (949) 477-9080

5     Attorneys for Defendants,
        LEISURE SOCIETY UNLIMITED, LLC
6     and TRAVIS JOHNSON

7

8                IN THE UNITED STATES DISTRICT COURT

9             FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                    SOUTHERN DIVISION

11

| | |
|---|---|
| 12   TRAVISMATHEW, LLC, a California limited liability company, | CASE NO. SACV12-213 JST (MLGx) |
| 13 | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| 14         Plaintiff, | |
|       v. | [Evidentiary Objections to Declarations of Kruger, Brasher, Rosaasen, Ellis and |
| 15 | Sunderland in Support of Plaintiff's Motion for Preliminary Injunction and |
| 16   LEISURE SOCIETY UNLIMITED, LLC, a California limited liability company; | [Proposed] Order Filed Concurrently Herewith] |
| 17   TRAVIS JOHNSON, an individual, | |
|         Defendants. | **HEARING:** |
| 18 | Date:      April 23, 2012 |
| 19 | Time:      10:00 a.m. |
| 20 | Place:     Courtroom 10A |
| 21 | Judge:    Hon. Josephine Staton Tucker |

22

23

24

25

26

27

28

# I.

## SUMMARY OF OPPOSITION

As with Defendants' Motion to Dismiss, the issue presented by Plaintiff's Motion for Preliminary Injunction ("Motion") is whether Defendant Travis Johnson's ("Johnson") descriptive use of his actual name:  (a) constitutes trademark infringement or a violation of the Lanham Act; and (b) violates the terms of his settlement agreement ("Agreement") with Plaintiff.

As to the first issue, Plaintiff alleges that Johnson's use of his full name on marketing materials and online to describe his background at Plaintiff is a violation of trademark laws.  Plaintiff's Motion however, ignores the decision of two separate district courts – including a decision of this Court – that unequivocally hold that descriptive use of a person's name is permitted under trademark law.  *Hensley Mfg. v. ProPride, Inc.*, 622 F. Supp. 2d 554, 557 (E.D. Mich. 2008), *affirmed by Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603 (6th Cir. 2009); *Paul Frank Indus. v. Sunich*, 502 F. Supp. 2d 1094, 1099 (C.D. Cal. 2007).

As to the second issue, the Agreement only limits Johnson's use of his name in a commercial sense, or as a trade name, trademark or service mark.  The Agreement does not preclude – nor could it under *Hensley* and *Paul Frank* – Johnson's description of himself, his past experience or his association with a new venture on marketing materials, business cards, print and online media or in interviews.

In total, neither Plaintiff's trademark claims nor its contract claims have any likelihood of success based on current caselaw and the evidence offered in support of the Motion.  Plaintiff has similarly not made any evidentiary showing of the purported irreparable injury it would suffer because of Defendants' non-infringing conduct.  Coupled with its seventeen week delay in seeking injunctive relief, it is clear that it has not suffered nor will it suffer an irreparable injury.

.

1

A balancing of the equities in this case reflects that Plaintiff has very little likelihood of prevailing on its trademark and contract claims and no irreparable injury that it seeks to enjoin.  Plaintiff cannot prevail on its Motion and the Court must deny it in its entirety.

## II.

## REQUIREMENTS TO ESTABLISH ENTITLEMENT TO A PRELIMINARY INJUNCTION.

The "grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged in except in a case clearly warranting it." *Dymo Industries, Inc. v. Tapeprintet, Inc*., 326 F.2d 141, 143 (9th Cir. 1964); *Shelton v. National Collegiate Athletic Assoc*., 539 F.2d 1197, 1199 (9th Cir. 1976) (preliminary injunction is an "extraordinary remedy.")   The Court should deny a motion for preliminary injunction where the movant's right to relief is doubtful.  *Dymo Industries, Inc., supra*, 326 F.2d at 143 (affirming denial of preliminary injunction where there was doubt as to validity of registered mark); *Alameda Conservation Assoc. v. California*, 437 F.2d 1087, 1092 (9th Cir. 1971), cert. denied, 402 U.S. 908 ("a preliminary injunction should not issue in a doubtful case").

To obtain the extraordinary remedy of a preliminary injunction, Plaintiff assumed the substantial burden of demonstrating either that (i) it would suffer irreparable harm if relief were denied; (ii) it would probably prevail on the merits; (iii) the balance of the potential harms favored it; and (iv) the public interest favored the entry of preliminary injunctive relief; or a "combination of probable success on the merits and the possibility of irreparable injury if relief  is not granted" or the "existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor." *International Jensen, Inc. v. Metrosound USA, Inc*., 4 F.3d 819, 822 (9th Cir. 1993).   These "two alternatives represent' extremes of a single continuum,' rather than two separate tests." *Walczak v. EPL Prolong, Inc*., 198 F.3d 725, 731 (9th Cir. 1999).

2

### III.

### PLAINTIFF DOES NOT HAVE A LIKELIHOOD OF PREVAILING ON THE MERITS.

**A.    Plaintiff's Trademark Claims Are Not Based on a Legally Cognizable Theory.**

Plaintiff's "Trademark Claims" are based on its allegation that Defendants wrongfully used the "Travis Matthew" name and infringed on Plaintiff's trademarks and logos associated with the TRAVISMATHEW marks.  Plaintiff claims that Defendants' acts have resulted in a likelihood of confusion in violation of the Lanham Act and California Business & Professions Code Section 17200.

**1.    The *Hensley* and *Paul Frank* Decisions Hold that An Individual May Use His Name in a Descriptive Sense.**

Two recent cases directly address the issue of whether an individual may use his name in a descriptive sense after assigning the rights to another.  *Hensley Mfg. v. ProPride, Inc.*, 622 F. Supp. 2d 554, 557 (E.D. Mich. 2008), *affirmed by Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603 (6th Cir. 2009); *Paul Frank Indus. v. Sunich*, 502 F. Supp. 2d 1094, 1099 (C.D. Cal. 2007).

In *Hensley,* the plaintiff was a manufacturer of trailer products that entered into a licensing agreement with inventor James Hensley.  Under the agreement, the plaintiff would manufacture and sell the inventor's trailer hitch design under the  names "Hensley"  and "Hensley Arrow," both of which the plaintiff trademarked.  *Id.* Hensley split with the plaintiff and later designed a new trailer hitch that he licensed to a company named Propride.  *Id.*

Relying on its licensing agreement with Hensley, the plaintiff sued Hensley and Propride, alleging that Hensley had sold the use of his name to the plaintiff and that his subsequent use of "Hensley" was trademark infringement and unfair competition.  *Id.* The plaintiff also alleged state law claims, including breach of contract and tortious interference with a business relationship and sought a preliminary injunction.  *Id.*

3

1    In support of its complaint and its motion for preliminary injunction, the
2    plaintiff offered that:  (a) Propride marketed the new trailer hitch as the "Propride
3    Pivot Point Projection Hitch; (b) In advertisements, Propride identified Hensley as the
4    inventor of the Propride hitch and described Hensley's background; (c) The Propride
5    website included a section on "The Jim Hensley Hitch Story," and described his
6    relationship to Propride; and (d) The plaintiff also identified an internet domain name
7    of www.jimhensleyhitch.com, which redirected users to Propride's website.  *Id.*

8        The defendants claimed that their use of Hensley's name was not trademark
9    infringement.  *Id.*  In considering this claim, the court first held that "the use of an
10   individual's name in a descriptive sense, as opposed to the use as a trade name, is
11   acceptable under trademark law."  *Id.* at 559-60 (Internal citations omitted).

12       Next, the court rejected the plaintiff's argument that Hensley's use of his name
13   was improper because he had sold it as a trademark to the plaintiff.  *Id.* at 560.  The
14   court reasoned that even if Hensley had sold the use of his name as a trademark, he
15   was *only* prevented from using his personal name as part of that of another company or
16   on other products.  *Id.*  Thus, the court held that Hensley was permitted under
17   trademark law to take advantage of his individual reputation and could establish a
18   company that competed against the purchaser of the trade name *and* advertise his
19   affiliation with the new company.  *Id.*

20       Because Hensley and Propride were only referencing Hensley's name and
21   reputation – and not marketing the Hensley name on a new product or company - the
22   court granted the defendants' motion to dismiss and denied the plaintiff's motion for
23   preliminary injunction.  In addition, the court dismissed the breach of contract claim
24   related to the licensing agreement because it was based on the same facts in the
25   unsuccessful trademark infringement claim.  *Id.* at 562.

26       Like *Hensley,* the Central District has also explicitly permitted an individual to
27   use his name in a descriptive sense to describe his connection with a new venture.
28   *Paul Frank Indus. v. Sunich*, 502 F. Supp. 2d 1094, 1099 (C.D. Cal. 2007).  In *Paul*

4

*Frank*, the Court considered whether to grant the plaintiff's motion for preliminary injunction in its trademark infringement claim against the plaintiff's former namesake designer, Paul Frank Sunich.  Sunich had left his former company that bore his name to start a competing venture.  *Id.* at 1097.  In his commercial activity with the new company, Sunich identified himself as the creator of his new company's products.  *Id.* He and his new company also maintained websites that described the new company's products and informed the reader that he left his old company "Paul Frank Industries." *Id.*

In determining whether to issue a preliminary injunction, the Court acknowledged that:

> [E]ven where an individual has sold rights to a name, he can only be precluded from using the name as part of another company name or on other products. He *cannot be precluded from taking advantage of his reputation by establishing a competing company, or advertising that he is affiliated with a new company.*

*Id.* (Emphasis added).

On this basis, the Court crafted a narrow injunction that enjoined Sunich from the use of his name insofar as it was used in the sale of the defendants' t-shirts.  *Id.* at 1103.  The Court however, permitted Sunich to use his full name in signatures, business meetings, and other such contexts "*where use of the name does not resemble a trademark or trade name, and does not appear on goods similar to those sold by* [the plaintiff]."  *Id* at 1103 (Emphasis added).   The Court held that Sunich could use his name on "business cards or to identify himself as the designer of [the d]efendants' products in a message or informative piece posted on [the d]efendants' websites."  *Id.*

## 2.   Johnson's Descriptive Use of His Name Does Not Violate the Trademark Laws.

Plaintiff offers the following evidence to establish its likelihood of success on its claims:

- While employed at Plaintiff, Johnson never used his middle name "Matthew;" Opposition at 6.

- Johnson started using his middle name in marketing his new golf apparel line at co-Defendant Leisure Society Unlimited, as in "***Travis Matthew Johnson***, the former founder and creative director of golf apparel company ***Travis Mathew*** . . . . will launch Leisure Society as a new luxury lifestyle apparel collection at the PGA Show. . . , ;  *Id.* (Emphasis in the original);

- Johnson was referred to by his full name, including his middle name, on the Golf Wire website while promoting Leisure Society.  *Id.* at 7.

- Johnson placed his full name on his Leisure Society business cards and featured his full name on Leisure Society's website.  *Id.*

- Johnson's "LinkedIn" page identifies himself as "Travis Matthew J." and "Travis Matthew."  *Id.*

Accepting each of these contentions as true, they merely reflect Johnson's *descriptive* use of his name.  Plaintiff has no likelihood of success for its Trademark Claims because courts have held that this use is permitted under trademark law.  Thus, Plaintiff's protracted discussion of the likelihood of confusion has no bearing when Johnson has not even used his name in a commercial sense.[1]

For example, the *Paul Frank* Court issued a preliminary injunction *that allowed* the defendant to place his *full name* "in signatures, business meetings, and other such contexts where use of the name does not resemble a trademark or trade name."  *Paul Frank*, 502 F. Supp. 2d at 1102.  The Court also held that the defendant was "free to let others know that he used to work with and was in fact a founder and designer at [the

_____

[1] Notably, not a *single* customer contacted by Plaintiff submitted a declaration to affirmatively acknowledge that they were "confused" by Johnson's use of his personal name.  *See, e.g.,* Declaration of Ryan Ellis at ¶15 (the contacted customers "declined to provide a declaration.")  Instead, Plaintiff has relied on self-serving declarations of its employees that are rife with hearsay statements and unauthenticated and vague third-party accounts of alleged "confusion" in the marketplace.

6

1  plaintiff], in any business or commercial setting," so long as he made clear that his

2  affiliation with [the plaintiff] had terminated.

3      Similarly in *Hensley,* the Court concluded that the defendant was allowed to use

4  his name in a descriptive sense and could advertise *both* his affiliation with his old

5  company and with the new venture.  Such use, according to the *Hensley* Court, was

6  "acceptable under trademark law."  *Hensley Mfg*., 622 F. Supp. 2d. at 559-60.

7      Johnson has done *exactly* what was permitted by *Hensley* and *Paul Frank.*  To

8  that point, Plaintiff's evidence demonstrates that Johnson has used his full name on

9  business cards and in marketing material.  He has accurately described himself in print

10  and online as the *current* co-founder of Leisure Society Unlimited as well as the

11  *former* founder of Plaintiff.

12      The *Hensley* and *Paul Frank* Courts only enjoined the defendant's use of his

13  name when it was placed as part of the new company's name or on the new company's

14  products.  Johnson has not done either and accordingly, there is no basis to restrain

15  Johnson's descriptive use of his name.  The fact that Johnson is allegedly now using

16  his full or middle name is irrelevant because he is using it in a descriptive sense.

17  Based on the non-persuasive evidence presented by Plaintiff on this issue and the

18  holdings of *Hensley* and *Paul Frank,* Plaintiff has no likelihood of prevailing on its

19  Trademark Claims.[2]

20  **B.     Plaintiff's Contract Claims Are Not Likely to Succeed Because**

21  **Johnson Has Not Used His Name in a Commercial Manner.**

22      Plaintiff's "Contract Claims" are based on its assertion that Johnson breached

23  the Agreement by engaging in a "commercial use" of his personal name.  As part of the

24  Agreement, Johnson agreed to assign to Plaintiff the right to use a portion of his

25  _____

26  [2]  As acknowledged by Plaintiff, an "action for unfair competition section 17200 is
    'substantially congruent' to a trademark infringement claim under the Lanham

27  Act."  *Grooms v. Legge*, 2009 U.S. Dist. LEXIS 29235 (S.D. Cal. April 8, 2009).  It
    follows then, that Plaintiff's claims under Business and Professions Code Section

28  17200 fail for the same reasons set forth above for its claims under the Lanham Act.

1   personal name, "namely Travis Mathew."  Motion at 4-5.  In Paragraph 4(f) of the

2   Agreement, Johnson agreed not to use any "trademark, trade name, service mark or

3   copyright" that uses "Travis Mathew."  *Id.*  Further, Johnson is permitted under

4   Paragraph 4(h) of the Agreement to use his first and middle names "on a personal

5   basis, but not in any commercial manner."    *Id.*

6          Plaintiff's evidence merely demonstrates that Johnson has used his name only in

7   a descriptive sense.  He has not used it in the manner of a "trademark, trade name or

8   service mark," and has not used it as part of Leisure Society's name or its product line.

9   Thus, Plaintiff's Contract Claims are belied by their own evidence and Plaintiff cannot

10  demonstrate a likelihood of success on them.

11                                          **IV.**

12              **PLAINTIFF'S DELAY IN MOVING FOR A PRELIMINARY**

13              **INJUNCTION AND LACK OF EVIDENCE PRECLUDE A**

14                     **FINDING OF IRREPARABLE HARM**

15         A preliminary injunction "may only be granted when the moving part has

16  demonstrated a significant threat of irreparable injury."  *Simula, Inc. v. Autoliv, Inc.*,

17  175 F.3d 716, 725 (9th Cir. 1999).   The threat of irreparable harm must be imminent

18  and immediate. *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668,674 (9th Cir.

19  1988).

20         Here, Plaintiff first had notice of Defendants' alleged infringing conduct on

21  December 11, 2011, when Defendants began using "Travis Matthew Johnson" in their

22  promotions.  Motion at 6.  Almost 17 weeks have passed between Plaintiff's first

23  notice and the filing of Plaintiff's Motion, and in that time, Plaintiff filed a Complaint

24  and unsuccessfully sought expedited discovery prior to bringing the Motion.

25         Preliminary injunctions are generally granted "under the theory that there is an

26  urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking

27  enforcement of those rights, however, tends to indicate at least a reduced need for such

28  drastic, speedy action." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985).

Plaintiff's delay in bringing this Motion shows that it will not suffer irreparable and immediate harm sufficient to justify a preliminary injunction.

Moreover, Plaintiff has not offered any evidence on its irreparable injury. No customer has come forward on Plaintiff's behalf to claim that he did not purchase Plaintiff's products because of "confusion." Similarly, not one of Plaintiff's declarations describe the lost sales or the ascertainable impact to its business that has allegedly been wrought by Defendants' infringing conduct. Plaintiff has offered no evidence to describe its "irreparable injury" and it is speculative at best.[3]

## V.

### THE BALANCE OF EQUITIES CUTS AGAINST PLAINTIFF

This case is not about harm to Plaintiff, Johnson's use of his middle name or the violation of any of its "rights." Plaintiff filed this case to attack Johnson's new venture, a competing line that poses a formidable threat to Plaintiff's own products. The *Hensley* and *Paul Frank* Courts have endorsed the very conduct that Johnson is accused of engaging in. Because of these decisions, Plaintiff has no likelihood of success on its Contract or Trademark Claims and its delay in seeking relief and absence of legitimate evidence preclude any finding of irreparable injury. The balancing of equities slants heavily toward Defendants.

## VI.

### CONCLUSION

As set forth above, Plaintiff has not established that it has a likelihood of success on either its Trademark or its Contract Claims. Plaintiff has also not established an irreparable injury based on Defendants' conduct. Because it has not met its substantial

---

[3] Defendants are also aware that Plaintiff has contacted its customers in an effort to discredit Johnson and his new venture and inform them that Johnson is no longer associated with it. By this step, Plaintiff is eliminating any "confusion" in the marketplace and will have no future injury because of Defendants' conduct.

burden in establishing the need for a preliminary injunction, Defendants respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction.

Additionally, Defendants' Motion to Dismiss Plaintiff's Complaint is fully briefed and set for hearing on April 16, 2012.  Plaintiff's Motion will be moot if Defendants prevail on their Motion to Dismiss and Defendants respectfully request that the Court stay further proceedings on Plaintiff's Motion until it has issued its order on Defendants' Motion to Dismiss.


DATED:  April 2, 2012

                                        TOM S. CHUN
                                        LAW OFFICES OF TOM S. CHUN


                                        By:   s/Tom S. Chun
                                                   Tom S. Chun

                                        Attorneys for Defendants,
                                        LEISURE SOCIETY UNLIMITED, LLC
                                        and TRAVIS JOHNSON

**CERTIFICATE OF SERVICE**

I, Tom S. Chun, declare as follows:

I hereby certify that on April 2, 2012, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

| | |
|---|---|
| **Larry C. Russ** | **lcruss@raklaw.com** |
| **Michael Brophy** | **mbrophy@raklaw.com** |
| **Irene Y. Lee** | **ilee@raklaw.com** |

Executed on April 2, 2012.

/s/ Tom S. Chun
Tom S. Chun

11