O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVISMATHEW, LLC,<br><br>  Plaintiff,<br><br>  vs.<br><br>LEISURE SOCIETY UNLIMITED, LLC, and TRAVIS JOHNSON,<br><br>  Defendants. | CASE NO. SACV 12-213-JST (MLGx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

Before the Court is a Motion for Preliminary Injunction filed by Plaintiff TravisMathew, LLC ("Plaintiff" or "TravisMathew). (Doc. 20.) Defendants Leisure Society Unlimited, LLC ("Leisure Society") and Travis Johnson ("Johnson") (collectively, "Defendants") filed an Opposition (Opp'n, Doc. 23), and Plaintiff replied (Reply, Doc. 30). Having considered the papers and heard oral argument, the Court GRANTS Plaintiff's Motion for a Preliminary Injunction for the reasons discussed below.

**BACKGROUND**

Plaintiff TravisMathew was founded in 2007, by Johnson, Travis Brasher, and John Kruger. (Kruger Decl. ¶ 1, Doc. 20-1.) TravisMathew has enjoyed steady growth during its first few years of operation, and has cultivated significant goodwill and reputation in the golf apparel industry. (*Id.* ¶¶ 2-3, 5.)

In March 2010, Plaintiff terminated Johnson's employment, leading to a Settlement and Release Agreement ("Agreement") between Johnson and Plaintiff. (*Id.* ¶¶ 6-7; Kruger Decl., Ex. C, Doc. 20-4.) The Agreement contains several provisions relevant to this Motion:

> *Paragraph 4(e)*: "Johnson agrees to assign and does hereby assign all right, title and interest to any trademarks, service marks or trade names . . . , including, but not limited to the name and trademark 'Travis Mathew' in any form, variation or combination and the initials 'TM' in any form or combination, throughout the world. Johnson further agrees to assign and does hereby assign to [TravisMathew] all of Johnson's right, title and interest in and to the use of a portion of his personal name, namely 'Travis Mathew', together with its associated

goodwill, if any, and any rights of publicity, throughout the world . . . ."

*Paragraph 4(f)*: "Johnson agrees not to use or assist others to use any trademark, trade name, service mark or copyright that uses any current or planned name or trademark or service mark or logo of [Travis Mathew], including but not limited to: (i) "Travis" and "Mathew" alone, or in any combination, as a trademark, trade name, or service mark; (ii) in the stylized form of [TravisMathew's trademarks]; or (ii) [sic] any name, trademark or service mark or copyright substantially similar thereto or likely to cause confusion therewith.

*Paragraph 4(h)*: "The parties hereto acknowledge and understand that 'Travis' is Johnson's first name and 'Matthew' is Johnson's middle name and that Johnson may continue to use his first and middle names as is reasonably necessary on a personal basis, but not in any commercial manner that would be in violation of the terms of this Agreement or cause a likelihood of confusion. Johnson may state that he was formerly employed with, a founder or Creative Director of travisMathew. Johnson also may use his name "Travis Johnson" in any commercial manner, by way of example, '[Brand Name X]' by Travis Johnson."

On June 8, 2010, the United States Patent and Trademark Office ("PTO") issued a Certificate of Registration for the trademark "TravisMathew." (Kruger Decl. ¶ 3, Ex. A,

Doc. 20-2.) TravisMathew also applied to register its "TM" logo with the PTO, which approved the application and issued a Notice of Allowance. (*Id.* ¶ 4, Ex. B, Doc. 20-3.)

In December 2011, Leisure Society issued a press release titled "Travis Matthew Johnson to Collaborate with CFDA Designer Shane Baum on New Luxury Lifestyle Apparel Collection." (Kruger Decl., ¶ 13, Ex. D, Doc. 20-5.) Since then, Defendants have advertised Johnson's affiliation with Leisure Society using Johnson's full name, Travis Matthew Johnson, in a press release, advertisement for a golf tournament, on Johnson's Leisure Society business cards, and on the Leisure Society website. (*Id.* ¶¶ 18-19, 22, Ex. I, Doc. 20-10.) Additionally, Johnson uses the name "Travis Matthew J." on his LinkedIn profile. (Lee Decl. ¶¶ 9-13, Ex. F-H, Docs. 20-22, 20-28, 20-29, 20-30.)

Plaintiff filed this action on February 8, 2012, asserting claims for trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) ("Lanham Act claims"), unfair competition in violation of Cal. Bus. & Prof. Code § 17200 ("UCL"), breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference with contract. On March 26, 2012, Plaintiff filed this Motion, asking the Court to issue a preliminary injunction.

**LEGAL STANDARD**

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 676 (2008) (internal quotation marks omitted). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tx v. Camenisch*, 451 U.S. 390, 395 (1981). A district court should issue a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). This requires the district court to making findings of fact and conclusions of law. *Perfect*

1  *10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1157 (9th Cir. 2007); *see LGS Architects,
2  Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1155 (9th Cir. 2006).

3  "[T]he party seeking the injunction . . . bear[s] the burden of demonstrating the
4  various factors justifying preliminary injunctive relief . . . ." *Granny Goose Foods, Inc. v.
5  Bhd. of Teamsters*, 415 U.S. 423, 441 (1974). "A plaintiff seeking a preliminary injunction
6  must establish that he is likely to succeed on the merits, that he is likely to suffer
7  irreparable harm in the absence of preliminary relief, that the balance of equities tips in his
8  favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. This
9  "requires the plaintiff to make a showing on all four prongs." *Alliance for the Wild Rockies
10 v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

12 **DISCUSSION**

14     **I.    Likelihood of Success on the Merits**

16 Plaintiff asserts that it is likely to succeed on the merits of its breach of contract,
17 Lanham Act, and UCL claims. Because the Court concludes that Plaintiff is likely to
18 succeed on its breach of contract claim, the Court will not analyze the likelihood of success
19 on the merits of Plaintiff's other claims.

20 Paragraph 4(h) of the Agreement states that "Johnson may continue to use his first
21 and middle names as is reasonably necessary *on a personal basis*, but *not in any
22 commercial manner* that would be in violation of the terms of this Agreement *or cause a
23 likelihood of confusion*." (Kruger Decl., Ex. C at 5, ¶ 4(h)) (emphasis added). That same
24 paragraph of the Agreement clearly states an example of an acceptable use of Johnson's
25 name in a commercial context: "Johnson also may use his name 'Travis Johnson' in any
26 commercial manner, by way of example, '[Brand Name X]' by Travis Johnson." (*Id.*)
27 Plaintiff has submitted evidence that Defendants have used "Travis Matthew Johnson" to

advertise Johnson's affiliation with Leisure Society, including using Johnson's full name in press releases, on a golf tournament advertisement, on the Leisure Society website, and on Johnson's Leisure Society business cards.  Each of these uses of Johnson's full name is use of Johnson's full name in a "commercial manner."  Defendants assert that Johnson has not used his full name in a commercial sense.  (Opp'n at 7-8.)  However, the plain meaning of "commercial manner," particularly when juxtaposed with "personal basis," encompasses any use in connection with a company or other business endeavor.  Johnson is clearly using his full name in connection with a company, Leisure Society, and therefore is using his full name in a commercial manner.

Plaintiff submits further evidence that the use of Johnson's full name in a commercial manner creates a likelihood of confusion as to the affiliation between Plaintiff and Leisure Society.  One merchandiser at a golf club in Florida, Ms. McClean-Ragsdale, wrote an email indicating that she had set up a meeting with Leisure Society at the PGA trade show, and asked whether she needed to set up a separate appointment with Plaintiff.  (Kruger Decl. ¶ 16, Ex. E, Doc. 20-6.)  On a morning show on the Golf Channel, the Fashion Director of Golf Digest, Marty Hackel, discussed the 2012 PGA Merchandise Show, and stated that "Leisure Society was there from Travis Matthew."  (Sunderland Decl. ¶¶ 6-9, Ex. C, Doc. 20-18.)  The founder and president of the National Asian Golf Association, which offers marketing opportunities to various companies, asked Leif Sunderland, Plaintiff's Marketing Director, whether someone named "Bud" with an email address of "bud@leisuresociety.com" worked with Sunderland.  (*Id.* ¶¶ 3-4, Ex. A, Doc. 20-19.)  This evidence not only establishes a likelihood of confusion, but suggests that there is actual confusion in the marketplace.

In response, Defendants challenge large portions of the declarations submitted by Plaintiff in support of this Motion.  (Docs. 24-28.)  Defendants assert that Plaintiff's evidence is inadmissible on various grounds, including hearsay.  The Court agrees that some of the evidence submitted by Plaintiff would be inadmissible at trial, particularly the

hearsay contained in the Ellis Declaration regarding the confusion expressed by many buyers. However, "[t]he urgency of obtaining a preliminary injunction necessitates a prompt determination . . . . The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) ("A district court may, however, consider hearsay in deciding whether to issue a preliminary injunction."). Therefore, giving the appropriate weight to all of the evidence submitted by Plaintiff, the Court concludes that Defendants have used Johnson's name in a commercial manner in a way that causes a likelihood of confusion, and thus, Plaintiff is likely to succeed on the merits of its breach of contract claim, at the very least.

## II.     Likelihood of Irreparable Harm

Plaintiff asserts that it is suffering and will continue to suffer irreparable harm because it has lost control of its reputation and goodwill as a result of the confusion regarding the relationship between Plaintiff and Leisure Society. (Mem. of P. & A. at 20-21, Doc. 20.) Defendants dismiss this argument as speculative, asserting that "not one of Plaintiff's declarations describe the lost sales or the ascertainable impact to its business that has allegedly been wrought by Defendants' infringing conduct." (Opp'n at 9.) However, it is precisely because the impact from the actual confusion that has resulted is not "ascertainable" or easily quantified that monetary damages will not suffice. While it is not certain that Plaintiff's reputation will suffer or that goodwill will be diluted or lost, and the manner in which this may occur is somewhat speculative, the evidence of actual confusion presented by Plaintiff establishes that there is a *likelihood* of irreparable harm as a result of Plaintiff's loss of control of its reputation and goodwill. Accordingly, this factor weighs in favor of a preliminary injunction.

### III. Balance of Hardships

While Plaintiff has shown that it is likely to suffer irreparable injury if a preliminary injunction does not issue, Defendants do not point to any specific harm that they will suffer if a preliminary injunction issues. Additionally, the Agreement contemplates injunctive relief, including preliminary relief, because legal remedies may not adequately protect the interests of the party seeking relief. (Kruger Decl. Ex. C at 8, ¶ 14.) Therefore, any hardship that Defendants would potentially suffer is mitigated by the fact that Defendants were on notice that a preliminary injunction may be sought under these circumstances. Instead, Defendants simply assert that the balance of hardships tips in their favor because Plaintiff is unlikely to succeed on the merits and because Plaintiff has not shown irreparable harm, an assertion the Court rejects. Because Defendants have not identified any harm that they would suffer if a preliminary injunction issues, the Court concludes that the balance of hardships tips decidedly in favor of Plaintiff.

### IV. Public Interest

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009) (citation and internal quotation marks omitted). On the other hand, if 'the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Id.* (citation omitted). While a contract between private parties ordinarily has no impact on the public, the specific provision at issue here implicates trademark law, the very purposes of which are to protect

1  consumers from confusion and "to protect the investment in a mark made by the owner."
2  *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 873 (9th Cir. 1999).  Accordingly, the
3  Court concludes that the public interest favors the issuance of a preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for a Preliminary Injunction.  Defendants are hereby enjoined from using any variation of Johnson's full name, such as "Travis Matthew Johnson," "Travis Matthew," "TM Johnson," "TM," "Travis Matthew J," "Travis Mathew," or "travisMathew," in connection with Leisure Society, including any oral or written communication, marketing, or advertising, unless accompanied by a disclaimer that makes clear that (1) Johnson is no longer affiliated with TravisMathew; and (2) there is no affiliation between Leisure Society and TravisMathew.

DATED: April 26, 2012

**JOSEPHINE STATON TUCKER**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE